Sam A. Haigh v. Commissioner.
Haigh v. Commissioner
Docket No. 3523.
United States Tax Court
1945 Tax Ct. Memo LEXIS 165; 4 T.C.M. (CCH) 613; T.C.M. (RIA) 45204; June 11, 1945
*165 Where a Massachusetts Trust for tax purposes is an association taxable as a corporation, held, the criteria to be employed in determining the value of the Trust shares are those provided for in the official Regulations for determining the value of shares of stock in a corporation; held, further, the separate identity of the Trust will not be disregarded, and the gift of shares of stock in the Trust will not be treated as the gift of a part of the assets of the Trust in kind. Value of the trust shares is determined under Regulations 108, section 86.19, relating to the gift tax. Mark E. Lefever, Esq., 1507 Packard Bldg., Philadelphia, Pa., for the petitioner. William H. Best, Jr., Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This proceeding involves the determination by the respondent against petitioner of a deficiency in gift tax for the calendar year 1940 of $6,285.89. In a statement attached to the deficiency notice is this explanation: The deficiency results from the following adjustments: Schedule A
Returned
Determined
1st Item
29 shares of stock of
Sam Haigh Trust, 30
Winthrop Road, Win-
throp, Mass. given to
Clarence Haigh, 4945
Monument Rd. Phila-
delphia, Pa.
43,500.00
117,087.66
*166 The determined value of $4,038.54 per share for the Trust shares of the Sam Haigh Trust is based on a careful consideration of all relevant factors affecting fair market value, primary weight being accorded the adjusted book value wherein the underlying securities were valued at market. By appropriate assignments of error petitioner contests the above adjustment and prays that this Court determine that instead of a deficiency petitioner has overpaid his gift tax for the year 1940 and is entitled to a refund for that year and that such refund is not barred by the statute of limitations. Petitioner contends that instead of the valuation of $1,500 per share of the stock of the Sam Haigh Trust which he returned in his Gift Tax Return, the said stock had a fair market value on the date of gift, June 12, 1940, of $1,015.52 per share. The respondent contends that his determination of $4,038.54 per share should be upheld. Findings of Fact Petitioner is an individual and resides at 125 Sargent Street, Winthrop, Massachusetts. On March 13, 1941, he filed a United States Gift Tax Return for the calendar year 1940 with the collector of internal revenue at Boston, Massachusetts. In Schedule *167 A of this return he reported a gift of 29 shares of stock of the Sam Haigh Trust to his son Clarence Haigh, made on June 12, 1940, and as having a value at date of gift of $43,500 or a per share value of $1,500. The total tax payable as computed on the return was $606.88, which amount petitioner paid. The petition herein was filed on November 29, 1943. The Sam Haigh Trust, herein sometimes referred to as the "Trust," is a Massachusetts Trust which has 100 shares of outstanding capital stock. It was organized on or about January 1, 1923. Prior to the gift in question petitioner owned 80 shares and Clarence Haigh 20 shares. Immediately after the gift petitioner owned 51 shares and Clarence Haigh 49 shares. The principal business of the Trust was the operation, maintenance, leasing and sale of approximately 25 residential properties, all but three of which were located in Winthrop, Massachusetts. Most of these properties were single homes which had been converted into two or more family dwellings. The Trust regularly employed two men, William Remby, the manager, and Henry Hoffman, the maintenance man. There were also other employees from time to time. The rents received from the *168 operation of the residential properties formed the major proportion of the gross income of the Trust. The only other income received by the Trust was dividends from stocks and interest from bonds owned by the Trust. The capital stock of the Trust never had an open market at any time during the period of its existence. There were never any sales of this stock on the open market. On the date of the gift, the Trust had assets and liabilities with book values, as follows: Cash
$ 4,929.81
Stocks & Bonds
109,610.19
Mortgage (Somerset Mills)
17,860.45
Real Estate
237,999.32
Account Receivable
60.21
Total Assets
$370,459.98
Total Liabilities
21,545.04
Book value of total shares
$348,914.94
Book value of one share
$ 3,489.15
The above book values represented cost in the case of securities and cost less accrued depreciation in the case of the real estate. Except for cash and the account receivable, the above book values of the assets did not represent the fair market value thereof on the date of the gift. The real estate consisted of 32 separate parcels. The parties have stipulated that the fair market value of the stocks and bonds owned by the Trust *169 on June 12, 1940 was $164,475, less commissions of $536, and less taxes of $117.65, or a net value of $163,821.35. In addition to this amount interest of $763.93 had accrued on the bonds. On June 12, 1940, the mortgage on Somerset Mills was overdue and interest payments were then several thousand dollars in default. The Trust sold the mortgage and the overdue interest in September, 1944 for $9,000. The business of this concern was better in 1944 than it was in 1940. The fair market value of the mortgage and overdue interest on the date of the gift in question was $9,000. The town of Winthrop is a suburb of Boston. In 1940 it had a population of 15,000 to 16,000 people. It is closely built. The houses are single, double or row, and of frame construction. The average lot is 50 by 100 feet. In 1940 the Winthrop real estate market was depressed. At that time the banks had not unloaded a large amount of foreclosed real estate which had accumulated since the closing of the banks early in the National depression. The people of Winthrop were largely salaried employees and wage workers. The rental market in that locality in 1940 was fair with an average amount of vacancy. The tax assessment *170 system which existed in the town of Winthrop was inaugurated in the early twenties by one Frank W. Tucker. At that time there was a considerable amount of new building being done and building costs were high. All new buildings were assessed at practically 100 percent of their estimated cost. Tucker likewise increased the assessed value of all the property in Winthrop. There were practically no reduction in assessment values until the community changed the board of assessors in 1941. The 1940 assessments were practically on the same level with the 1920 assessments and in many cases went considerably beyond the fair market value of the assessed property. In 1940, three properties were sold in Winthrop for $8,000, $4,500, and $4,500, which had an assessed value in that year of $15,500, $8,500, and $5,600, respectively. On September 25, 1942, Eugene P. Whittier appraised 28 of the 32 pieces of real estate owned by the Trust as of June 12, 1940. This was done at the request of petitioner's counsel. Whittier has been in the real estate business for about 46 years, 30 of which have been in Winthrop. He has never met petitioner or been employed by either him or the Trust, except for this *171 one appraisal. He valued the 28 pieces of real estate as of June 12, 1940 at a total fair market value of $135,000. The four properties not considered in this appraisal were Sargent Street Beach, a lot at 275 Court Road in Winthrop, a lot in Miami, and a lot in New Hampshire. Whittier thought the market values in 1940 in Winthrop were generally about 42 percent lower than the assessed values. The assessed value in 1940 of the 28 pieces appraised by Whittier was $254,675. Whittier's appraisal of $135,000 was about 47 percent lower than the assessed value of $254,675. In November 1944, William H. Emerson appraised 30 of the 32 pieces of real estate owned by the Trust as of June 12, 1940. This was done at the request of respondent's counsel. Emerson is engaged in the real estate and insurance business. He was born and raised in Winthrop and 60 percent of his business is transacted there. He valued the 28 pieces of real estate, which had been appraised by Whittier, as of June 12, 1940 at a total of $257,300. He valued the Sargent Street Beach at $500 and the lot at 275 Court Road at $4,000. The two properties not considered in Emerson's appraisal were the lot in Miami and the lot in *172 New Hampshire. The market value of property in Winthrop in 1944 was between 20 and 33 percent higher than in 1940. A brief description of the 32 pieces of real estate owned by the Trust on June 12, 1940, the values testified to by both Whittier and Emerson, the assessed values, any additional valuation factors applicable to the particular property not referred to above, together with our ultimate finding of fair market value as of the date of gift follows immediately: (1) 101-103 Banks Street. This is a two-family frame dwelling with a two-car garage and sun parlors with each apartment. The foundation is cement block. It has two separate steam heaters. The house is about 20 years old and is built on filled land. The location is poor. It was assessed at $8,000 in 1940 and $6,800 in 1941. A property somewhat near this property, namely, 19 Wilshire Street, was sold in 1944 for $8,000. The Wilshire property was in a much better location than the Banks Street property. The two are not comparable properties. Whittier and Emerson appraised the fair market value of the Banks Street property as of June 12, 1940 at $4,100 and $8,000, respectively. We find it was $5,000. (2) 62 Beacon *173 St. and 57 Moore St. This was a single frame dwelling which was converted into a two-family house of three and five rooms, respectively. On entrance was on Beacon Street and the other on Moore Street. It is about 50 years old. It is located in a very much depressed area. It was assessed at $3,900 in 1940 and $3,700 in 1941. On or about June 12, 1944, the Trust entered into an agreement to sell this property and three other properties (63-65 Beacon St.; 5-7 Faun Bar Avenue; and 252 River Road) to the same person. The purchaser's attorney raised serious title objections to all the properties, except the 252 River Road property, and as a result thereof the agreement to sell the three properties objected to was not executed. The title objection made in connection with the instant property was the fact that apparently there was a blanket mortgage outstanding on this property of $100,000 made back in the nineteen twenties. The Trust has not abandoned this property but is trying to find some way to clear its title. Whittier appraised the fair market value of this property as of June 12, 1940 at $3,200 on the assumption that the Trust had a good marketable title thereto. Emerson's value was *174 $4,400. We find the fair market value as of the basic date to be $2,000. (3) 63-65 Beacon Street. This is a duplex frame dwelling house consisting of 14 rooms. It has two steam heaters, old flooring and concrete foundation. The house is 45 or 50 years old. It has an unobstructed view of the ocean, but is in a poor locality with practically no yard area. On or about June 12, 1944, the Trust agreed to sell this property for $3,500, but due to a defective title the sale was not consummated. It and 5-7 Faun Bar Avenue were assessed together at $11,100 in 1940 and $9,900 in 1941. Whittier and Emerson appraised the instant property as of the basic date as having a fair market value of $2,500 and $5,500, respectively. Whittier's appraisal was on the assumption that the Trust had a good marketable title to the property. We find the fair market value of the property on the basic date to be $2,000. (4) 165 Court Road. This is a two-family house with a two-car garage under the house. Its location is very good and sets back 80 feet from the street on a brick foundation. It was originally erected as a single dwelling and the conversion into a two-family house of five and seven rooms was poorly *175 done. It has a private bathing beach and the beach is equipped with a wooden bulkhead. The house is about 20 years old and has been through two fires, one of which was a serious fire, and on the basic date the house had not been thoroughly repaired. In 1944, a much better property located at 111 Court Road sold for $10,500. The instant property was assessed at $9,950 in 1940 and $9,700 in 1941. Whittier and Emerson appraised the property as of the basic date at $5,600 and $10,000, respectively. We find the fair market value to be $7,500. (5) 205 Court Road. This is a single house, frame dwelling, eight rooms, all improvements, including oil heat. There is no garage but there is a sun room in the rear of the house overlooking the harbor. The house is relatively new and is in a good location. In September, 1940, the property at No. 12 Bartlett Parkway sold for $9,500. The house on the Bartlett property is comparable with the instant house but the location of the Bartlett property is slightly better. The instant property was assessed at $8,200 in 1940 and 1941. Whittier and Emerson appraised the property as of the basic date at $6,000 and $8,700, respectively. We find the fair market *176 value to be $7,500. (6) 215 Court Road. This is a relatively new frame two-apartment house with a built-in two-car garage. It is in a good location. The house has a tile bath, fireplaces, and is of the best construction. It has six and seven rooms, respectively, and sun rooms. It has riparian rights to the channel and a private bathing beach. It was assessed at $11,350 in 1940 and $10,850 in 1941, and was sold by the Trust on May 18, 1944 for $10,500. It was appraised by Whittier and Emerson as of the basic date, June 12, 1940, at $7,300 and $12,000, respectively. We find the fair market value on the basic date to be the amount of $8,750. (7) and (8) 281 Court Road and 283-285 Court Road. These two properties will be considered together. The house at 281 Court Road is an old, inexpensive, single, frame house which has been improved and is in an excellent location. Whittier valued it at $5,600 as of the basic date. The other house is a good conversion from a single to two-apartment house. Whittier valued it at $7,200 as of the basic date. Emerson valued them together at $27,000. The two properties were assessed as one unit at $26,550 in 1940 and $25,050 in 1941. We find the fair *177 market value of the two properties as of June 12, 1940 to be $15,400. (9) 30 Emerson Road. This is a two-family frame dwelling consisting of five rooms for each family, exclusive of sun rooms. It stands on a poured concrete foundation and is in a good location. The house is relatively new and was built by a speculator. It has a two-car garage built under the house. It was assessed at $9,800 in 1940 and $8,650 in 1941. Whittier and Emerson appraised this property as of the basic date at $6,200 and $10,000, respectively. We find its fair market value as of the basic date to be $7,000. (10) 5-7 Faun Bar Avenue. This property adjoins the property at 63-65 Beacon Street and is almost a duplicate of the latter, with the exception that the instant property has hot air heat whereas the former property has steam heat. On or about June 12, 1944, the Trust agreed to sell this property for $3,500, but due to a defective title the sale was not consummated. It and 63-65 Beacon Street were assessed together at $11,100 in 1940 and $9,900 in 1941. Whittier and Emerson appraised the instant property as of the basic date at $2,500 and $5,000, respectively. Whittier's appraisal was on the assumption *178 that the Trust had a good marketable title to the property. We find the fair market value of the property on the basic date to be the same as the 63-65 Beacon Street property, namely, $2,000. (11) 10 Grovers Avenue. This is a two-family frame dwelling with a poured concrete foundation. The house sets on a very steep grade and was built about 20 years ago. It is close to the beach and has an excellent view of the ocean. The Trust sold the property on November 18, 1943 for $7,500. It was assessed at $10,250 in 1940 and $8,100 in 1941. It was appraised by Whittier and Emerson as of the basic date at $5,400 and $10,500, respectively. We find its fair market value as of the basic date to be $6,250. (12) 164 Hermon Street. This is a small, inexpensive, single type bungalow in a poor location. It was sold by the Trust on June 10, 1944 for $2,000. It was assessed at $1,600 in 1940 and 1941. It was appraised by Whittier and Emerson as of the basic date at $1,800 and $2,000, respectively. We find its fair market value as of the basic date to be $1,800. (13) 20 Lewis Avenue. This is a two-family frame dwelling consisting of six and seven rooms, respectively, and two steam heaters. It *179 is about 18 years old. The location is good. The foundation is concrete block. There are no garages. The lot is 50 by 70 feet. In 1944 the Trust agreed to sell this property for $7,500, but due to a defective title the sale was not consummated. The attorney for the purchaser discovered a possible mortgage against the property of $10,500, and until this matter is cleared up the Trust will not be able to convey a good title to the property. This situation existed on the basic date. The assessed value of the property was $10,000 in 1940 and $8,500 in 1941. Whittier and Emerson appraised the property as of the basic date at $5,800 and $10,000, respectively. We find the fair market value as of the basic date to be $4,000. (14) 51-53 Lowell Road. This is a two-family frame dwelling consisting of five and six rooms, respectively, and sun parlors. It has a two-car garage under the house and two steam heaters. The location is good. The foundation is poured concrete and the side walls are wooden shingles. It was assessed at $10,050 in 1940 and $8,900 in 1941. Whittier and Emerson appraised the property as of June 12, 1940 at $5,700 and $10,000, respectively. We find its fair market value *180 as of the basic date to be $6,500. (15) 61-63 Lowell Road. This is a two-family frame dwelling consisting of five and six rooms, respectively, and sun parlors. It has fireplaces and a two-car garage built under the house. This property adjoins the property at 51-53 Lowell Road. The house on the instant property is a better house than the one on 51-53 Lowel Road. The instant house has an architectural design which gives it the resemblance of a single house. The location is good and the house is relatively new. It was assessed at $10,300 in 1940 and $9,550 in 1941. Whittier and Emerson appraised the property as of the basic date at $6,500 and $10,000, respectively. We find its fair market value as of the basic date to be $7,000. (16) 239 Pleasant Street. This is a large rambling house, single frame with a separate two-car garage. On the basic date it was in need of considerable repair. It is corner property. It has been used professionally by a dentist for 20 years. The foundation is of Quincy granite and the lot is 40 by 70 feet. Late in the fall of 1941 the adjoining property at 233 Pleasant Street sold for $5,300. It was also in need of considerable repair. The house on the property *181 that was sold had been converted into a two-family apartment. The instant property was assessed at $7,200 in 1940 and $7,150 in 1941. Whittier and Emerson appraised the instant property as of the basic date at $4,500 and $7,500, respectively. We find its fair market value as of the basic date to be $5,000. (17) 252 River Road. This is an old single frame house that has been poorly converted into a two-family apartment. The lot is shallow being 70 by 60 feet. In 1939, a house at 183 River Road, which was a one family dwelling and badly in need of repair, sold for $5,000. The Trust sold the instant property on November 1, 1944 for $5,000. The instant property was assessed at $7,800 in 1940 and $7,300 in 1941. Whittier and Emerson appraised the instant property as of the basic date at $4,000 and $7,500, respectively. We find its fair market value as of the basic date to be $4,200. (18) 120 Sargent Street. Originally this was a very good single house. It was the Delano property. It occupies a very large and excellent lot with a frontage of 120 feet on Sargent Street and 80 feet on Johnson Avenue. It was expensively converted into a very nice two-family apartment with a two-car garage. *182 It has all such improvements as oil heat, fireplace, tile baths, copper conductor pipes, fencing and landscape gardening. It was assessed at $20,000 in 1940 and $16,800 in 1941. Whittier and Emerson appraised it as of the basic date at $10,000 and $22,000, respectively. We find its fair market value as of the basic date to be $15,000. (19) 75 Temple Avenue. This is a two-family apartment poorly converted from a single house. The location is fair. There is a cheap metal garage on the property. In the spring of 1940 a much better house at 138 Highland Avenue sold for $9,000. The Trust sold the instant property on October 11, 1944 for $6,000. The instant property was assessed at $6,950 in 1940 and $6,500 in 1941. Whittier and Emerson appraised the instant property as of the basic date at $4,000 and $7,000, respectively. We find its fair market value as of the basic date to be $4,900. (20) 120 Shore Drive. This is a two-family, frame, corner dwelling, with five and six rooms, respectively, steam heat with oil, and is about 14 years old. It overlooks the ocean and rents well in the summer. The Trust sold the property on August 10, 1944 for $8,000. It was assessed at $9,850 in 1940 *183 and $9,000 in 1941. Whittier and Emerson appraised the property as of the basic date at $5,400 and $10,000, respectively. We find its fair market value as of the basic date to be $6,700. (21) 55 Wave Way Avenue. This is a fourfamily frame dwelling with wood shingle side walls. The foundation is poured concrete. There are four hot water heaters. The lot is 50 by 100 feet. It has two five-room apartments and two three-room apartments. It is 45 or 50 years old and is in a poor location. It sold in 1922 for $5,000. It was assessed at $13,150 in 1940 and $9,250 in 1941. Whittier and Emerson appraised the property as of the basic date at $3,500 and $11,000, respectively. We find its fair market value as of the basic date to be $6,000. (22) 125 Sargent Street. This is petitioner's personal residence. He rents it from the Trust. It is a corner property and is in an excellent location. It has a commanding view of the entire harbor. It consists of 10 rooms, two baths, and an extra lavatory. It is wood frame with stucco on the outer walls of the second and third floors. It has a slate roof. It has a sunken four-car garage. The house has the very latest of modern equipment. The land is well *184 landscaped, with trees, rock garden, driveways and footpaths. The house is between 40 and 50 years old. The property was assessed at $24,050 in 1940 and $19,350 in 1941. Whittier and Emerson appraised the property as of the basic date at $9,000 and $25,000, respectively. We find its fair market value as of the basic date to be $14,000. (23) Lot 71 Court Road. This is 7,000 square feet of vacant land. It is in a good location but has a bad, steep grade. It was assessed at $2,250 in 1940 and $1,600 in 1941. Whittier and Emerson appraised this lot as of the basic date at $1,300 and $3,000, respectively. We find its fair market value as of the basic date to be $1,400. (24) Lot 73 Court Road. This is 6,300 square feet of vacant land and is a slightly better lot than the one at 71 Court Road. It was assessed at $2,200 in 1940 and 1941. Whittier and Emerson appraised it at $1,500 and $2,800, respectively. We find its fair market value as of the basic date to be $1,500. (25) Lots 12-15 Bellevue Avenue. This property consists of 4 lots of a total area of 30,406 square feet of good, level and. Whittier valued them at $800 each or $3,200. Emerson thought the plot could be divided into *185 five lots and marketed for $1,300 each. In 1940, there was a small shop on this property which Emerson appraised at $400. It has since been torn down. This property was assessed at $6,800 in 1940 and $6,000 in 1941. We find the fair market value of this property as of the basic date to be $5,200. (26) Dorchester. This property is located at 61 Lithgow Street, Dorchester, Massachusetts. It is a relatively new three-apartment house and is what is generally known around Boston as a "three-decker." It has a detached three-car concrete block garage. Each apartment contains a separate steam heater, white sinks, standard bath, and hard pine floors. The foundation is granite stone. The roof is a flat top and gravel. There are three rear porches. The location is very accessible to transportation, schools, playgrounds and a large shopping district. It was assessed at $11,500 in 1940 and $9,800 in 1941. Whittier and Emerson appraised this property as of the basic date at $5,500 and $9,500, respectively. We find its fair market value as of the basic date to be $7,500. (27) Stoneham. This property is located at 594 Main Street, Stoneham, Massachusetts. It is a single frame dwelling and garage *186 in a good location, except that it is on a heavily traveled highway. It fronts about 150 feet on Main Street and 230 feet on Wilson Road. It was assessed at $7,875 in 1940 and 1941. Whittier and Emerson appraised it as of the basic date at $4,500 and $8,000, respectively. We find the fair market value of this property as of the basic date to be $6,000. (28) Melrose. This property is located at 11 Warren Street, Melrose, Massachusetts. It is an old single frame dwelling in a fairly good location with no garage. It has seven rooms, hard pine floors, white sinks, hot water heat, granite foundation, wood clapboard side walls, asbestos shingle roof and a front porch. It was assessed at $4,000 in 1940 and 1941. Whittier and Emerson appraised it as of the basic date at $3,200 and $4,000, respectively. We find its fair market value as of the basic date to be $3,200. (29) Sargent Street Beach. This is a little strip of land with a 35 foot frontage on the end of Sargent Street. It lies between 120 and 125 Sargent Street. It was assessed at $300 in 1940 and 1941. This was not included in Whittier's appraisal but at the hearing he did not think it had any value. Emerson thought it had a *187 value of $500 to the owners of 120 and 125 Sargent Street. We find its fair market value as of the basic date to be $175. (30) Lot 275 Court Road. This is a vacant lot 60 feet by 80 feet next door to 281 Court Road. It is a very desirable lot. It was assessed at $3,600 in 1940 and 1941. Whittier and Emerson appraised the lot as of the basic date at $2,000 and $4,000, respectively. Whittier's appraisal was made at the hearing. This lot was not included in Whittier's 1942 appraisal. We find the fair market value of the lot as of the basic date to be $2,800. (31) Miami Lot. This was a lot in Miami owned by the Trust on the basic date and its fair market value at that time was $50. (32) New Hampshire Lot. This was a lot in New Hampshire owned by the Trust on the basic date and its fair market value at that time was $275. The total fair value of the above 32 pieces of real estate owned by the Trust on June 12, 1940 was the amount of $166,600. The standard brokerage commission for the sale of real estate in Winthrop in 1940 was 5 percent of the gross sales price, which on $165,600 would be the amount of $8,330. The Trust filed corporation income and excess profits tax returns *188 for the years 1935 to 1940, inclusive, and reported a taxable net income or loss thereon, as follows: 1935 Net income
$ 3,909.36
1936 Net income
8,934.70
1937 Loss
4,587.11
1938 Loss
7,301.82
1939 Loss
7,746.12
1940 Loss
44,436.38
For the years 1935 and 1936, the Commissioner determined deficiencies and the Trust filed a petition with the United States Board of Tax Appeals (now the Tax Court). The parties stipulated that proceeding on the basis of a net income for 1935 of $2,390.76 and $25,500 for 1936. After making adjustments to the above stipulated taxable net income for 1935 and 1936 and the above reported losses for 1937 to 1940, inclusive, for items of nontaxable income and unallowable deductions, the actual commercial net income or loss for each of the years is as follows: 1935 Net income
$11,116.73
1936 Net income
3,555.59
1937 Loss
4,743,58
1938 Loss
7,150.32
1939 Loss
37,200.05
1940 Loss
62,549.98
The large loss for 1940 was due partly to a salary of $30,000 paid to Clarence Haigh during the year as Treasurer of the Trust and partly to a charge against income for that year of $18,113.60 for legal fees and costs of *189 prior years. The Trust declared and paid a dividend of $50 per share or $5,000 during the year 1936. No dividends were declared or paid by the Trust for the years 1937 to 1940, inclusive, or for the year 1935. A fair charge against the total assets for the expense of liquidating the Trust would be $10,000. The net worth of one share of stock of the Trust on the date of the gift, based upon the fair market value of the assets of the Trust less its liabilities on that date was $3,236.30, computed as follows: Cash
$ 4,929.81
Stocks & Bonds
163,821.35
Interest Receivable on bonds
763.93
Mortgage (Somerset Mills)
9,000.00
Real Estate (32 items)
166,600.00
Account Receivable
60.21
Total fair market value of
assets
$345,175.30
Less total liabilities
21,545.04
Net worth of total shares
$323,630.26
Net worth of one share
$ 3,236.30
To liquidate the real estate assets of the Trust would have required three years; commissions for selling real estate would have been $8,330. Other expenses would have been $10,000 for the three years required for liquidation. The fair market value of the 29 shares in the Sam A. Haigh Trust which petitioner gave his son, *190 Clarence Haigh, on June 12, 1940, was $79,750 or $2,750 per share. Opinion BLACK, Judge: This is a gift tax case. On June 12, 1940, petitioner gave his son 29 shares of stock of the Sam Haigh Trust. Section 1005 of the Internal Revenue Code provides that "If the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift." Our sole question is to determine the value of the 29 shares at the date of the gift. This is primarily a question of fact "But the question of what criterion should be employed for determining the 'value' of the gifts is a question of law." Powers v. Commissioner, 312 U.S. 259. See also Weber v. Rasquin, 101 Fed. (2d) 62; Forbes v. Hassett, 124 Fed. (2d) 925; Helvering v. Maytag, 125 Fed. (2d) 55; and Commissioner v. McCann, 146 Fed. (2d) 385. The Trust is a Massachusetts trust and for tax purposes is treated as a corporation. It filed its returns as a corporation for the years 1935 to 1940, inclusive. It had 100 shares of capital stock outstanding. Prior to the gift in question petitioner owned 80 shares and his son Clarence *191 owned 20 shares. The stock of the Trust was not traded on the open market. There was no evidence of any sales of the stock at any time. Neither was there any evidence of any offers to buy or sell. Regulations 108 relating to the Gift Tax under the Internal Revenue Code provides in part, as follows: SEC. 86.19 Valuation of Property. - (a) General. - The statute provides that if the gift is made in property, the value thereof at the date of the gift shall be considered the amount of the gift. The value of the property is the price at which such property would change hands between a willing buyer and a willing seller, neither being under any compulsion to buy or to sell. The value of a particular kind of property is not to be determined by a forced sale price. Such value is to be determined by ascertaining as a basis the fair market value at the time of the gift of each unit of the property. For example, in the case of shares of stock or bonds, such unit of property is a share of a bond. All relevant facts and elements of value as of the time of the gift should be considered. * * * * *
(c) Stocks and bonds. - The value at the date of the gift in the case of stocks and bonds, *192 within the meaning of the statute, is the fair market value per share or bond on such date. * * * * *
If actual sales or bona fide bid and asked prices are not available, then * * * the value is to be arrived at * * * in the case of shares of stock, upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock. Complete financial and other data upon which the donor bases his valuation should be submitted with the return. The respondent did not follow these regulations in arriving at the value of $4,038.54 stated in his deficiency notice. [1] He determined his value on the basis of the actual book value set out in our findings of $348,914.94, except that he changed the book value of the stocks and bonds from $109,610.19 to approximately $164,446. [2] In his brief he contends that Regulations 108 do not contain any provision for a valuation method to be applied to a personal family holding trust such as is now being considered and that "The situation here is exactly the same as if there were no trust and the donor had the title to the property in his individual name and had transferred *193 part of it by gift to his son, in which even the fair market value of the assets transferred would be the value of the gift to be reported on the gift tax return." We do not agree with this contention. For tax purposes a Massachusetts trust such as we have here is treated as an ordinary domestic corporation and we know of no reason why its shares of stock should not be valued in the same manner as the shares of stock in an ordinary domestic corporation where the stock is closely held. Under the respondent's contention we would have to ignore the separate identity of the Sam Haigh Trust. This we are not authorized to do. It was organized on or about January 1, 1923, and has been in business ever since then and we know of no reason for ignoring its separate identity at this time. It is evidence that the Commissioner has treated it as a corporation for income tax purposes and no one is contending it should be treated otherwise in that respect. *194 If we were to base our valuation of each share in the Trust on the basis alone of the fair market value of the underlying assets of the Trust on the date of the gift, we would find a fair market value of $3,236.30 for each share. If we should base the valuation alone on the liquidating value of the assets our finding would be $3,053 per share and this value would have to be discounted because of the fact that three years would be required to liquidate the assets of the Trust. If we were to use earnings and dividends for the five years prior to the gift as the sole criterion of value, we could find very little value for each share of the Trust on the basic date because only one dividend had been paid during these five years, and income had been realized in only two of them and losses in the other three. (The last three years prior to the date of gift.) But giving effect to all the elements of value prescribed in the Commissioner's regulations, namely, "upon the basis of the company's net worth, earning power, dividend-paying capacity, and all other relevant factors having a bearing upon the value of the stock," we have arrived at a value of $2,750 per share on the date of the *195 gift. Cf. Weber v. Rasquin, supra; Forbes v. Hassett, supra. In arriving at this value we have kept in mind that this Trust is not in liquidation. Petitioner has asked us to fix a value on the basis of the liquidating value of the assets, discounted by the number of years it would take to liquidate the assets and still further to discount the value so reached because of the lack of earning power of the Trust during the last three years prior to the date of the gift. Under petitioner's formula, starting out with his contention that the asset value per share as of June 12, 1940, was $2,769.40, we would arrive at a value of $1,015.52 per shares. The formula as used in his brief is as follows: Asset value per share as of
June 12, 1940
$2,769.40
Same discounted at 40%
1,662.00
Less 4 years' loss at $161.62 per
share per year, or $646.48
1,015.52
We reject petitioner's computation because it is not supported by the evidence or the regulations. The evidence was to the effect that the Trust is not in liquidation but is in active business as it had been for many years. The evidence is also to the effect that in two or three years after *196 the date of the gift, the real estate market very considerably improved and the rentals from such property also substantially improved. Petitioner's own witness testified that by the year 1944 the real estate market had improved to where it was the best it had been since 1929. While, of course, the valuation of the shares here to consider must be made as of the date of the gift, this improvement in the real estate market and the rental value of the property is illustrative of the fact that business enterprises have their ups and downs, some good years and some bad ones. The Sam Haigh Trust had been in the real estate business for many years, it also might well be expected to have its good years and its bad ones and the valuation of its shares should not be exclusively based on its showing in three unprofitable years just prior to the date of gift. We feel convinced from the evidence that each of the 29 shares of the Trust which petitioner gave his son on June 12, 1940, had a fair market value of at least $2,750 per share. This valuation should be used in a recomputation under Rule 50. Decision will be entered under Rule 50. Footnotes
1. The respondent determined that the value of the 29 shares on the date of gift was $117,087.66. This amount divided by 29 equals $4,037.51 instead of $4,038.54. ↩
2. By substituting $164,446 for $109,610.19, the respondent's determination of $4,037.51 per share may be shown as follows: ↩
Cash
$ 4,929.81
Stocks & Bonds
164,446.00
Mortgage (Somerset Mills)
17,860.45
Real Estate
237,999.32
Account Receivable
60.21
Total assets
$425,295.79
Less total liabilities
21,545.04
Value of total shares
$403,750.75
Value of one share
$ 4,037.51